In the Matter of the Welfare of Anthony Lawrence WALKER.

Bobby ROBY, Appellant,

v.

RAMSEY COUNTY WELFARE DEPARTMENT, Respondent,

Carolyn Walker Okoro, Respondent.

No. 49491.

Supreme Court of Minnesota.

Dec. 28, 1979.

Kueppers, Kueppers, VonFeldt & Salmen and Richard J. Gabriel, St. Paul, for appellant (Roby).

Tom W. Foley, County Atty. and Jeanne L. Schleh, Asst. County Atty., St. Paul, for Ramsey County Welfare Dept.

Timothy R. Geck, White Bear Lake, Guardian Ad Litem for Walker.

Joseph A. Rheinberger, St. Paul, for Okoro.

OTIS, Justice.

In this proceeding to terminate parental rights to minor children, Anthony Lawrence Walker and Prince Edward Walker, the Juvenile Court Division of the Ramsey County District Court ordered termination of the rights of the children's mother, Carolyn Walker Okoro; the rights of Bobby Roby, the admitted father of Anthony; and the rights of Isaac Thompson, the alleged father of Prince. Only appellant Bobby Roby opposed the petition. He appeals from an order denying his motion for a new trial and challenges the sufficiency of the evidence to support the court's order.

Although we have repeatedly recognized the importance of the relationship between parents and their children, and *In re Rosenbloom*, 266 N.W.2d 888 (Minn.1978), held that clear and convincing proof is required to warrant termination of parental rights, a review of the record satisfies us that this standard has been met.

The trial court found that appellant had abandoned Anthony and had substantially and continuously refused to give him

necessary parental care and protection.[1] That finding justifies termination under Minn.Stat. § 260.221(b)(1), (2) (1978). Appellant was incarcerated on a charge of armed robbery at the time of Anthony's birth on March 20, 1967. He was released from prison in May 1970 and saw the child in June in Kansas City, Missouri. Prince had been born to Carolyn while appellant was in prison and, since appellant did not wish to marry her, she and Anthony returned to St. Paul. In the next five years while married to another woman, appellant fathered two other illegitimate children.

On May 8, 1973, Anthony was found by the Juvenile Court Division to be dependent and neglected and was placed in the temporary legal custody of the Ramsey County Welfare Department. In August or September 1973, appellant drove to St. Paul and visited Anthony for an hour at his foster home. He then learned of the foster placement and gave the foster caretaker $25.00 to use for Anthony's needs, but made no effort to obtain his custody. In 1977, he sent a gift of $20.00 but did not visit the child again until he came to a termination hearing in January 1978.

Appellant was again imprisoned in May 1975 for armed robbery and perjury. His sentence expires in 1989, although, of course, he may be eligible for parole before that date. He testified that since his return to prison he has changed his attitude and life style and has become aware of the importance of the relationship between a father and his son. In June 1976 he initiated efforts to establish a relationship with Anthony by correspondence with Anthony's mother, the social worker, the foster caretaker of the Walker children, and others. He believes that if his rights are not terminated Anthony can continue to live in the foster placement or with appellant's mother until appellant's release from prison. Because of learning difficulties, Anthony has special educational needs which appellant's latter plan would not correct. Appellant's mother could not care for two children and, since Anthony and Prince have been together all of their lives, it seems clear that it would not be in the best interests of either child to separate them.

Appellant insists that he did not intend to abandon his son and argues that incarceration alone does not constitute abandonment. We recognized in *In re Staat*, 287 Minn. 501, 178 N.W.2d 709 (1970) that a separation of child and parent due to the incarceration of a parent, does not alone constitute intentional abandonment. We added, however, that the fact of imprisonment may combine with other factors, such as parental neglect and withholding of parental affection, to support a finding of abandonment. Both factors are present here. Appellant has seen the child only three times in eleven years and did not develop a real interest in him until his imprisonment in 1975. During a five-year period in which he was not incarcerated and was earning as much as $200.00 a week, he showed no concern for the child and made no effort to know him or to meet his needs. Although appellant would place the blame for his inaction on the instability and hostility of Anthony's mother and on the jealousy of appellant's wife, it is evident that he did not make even a minimal effort to meet his parental obligations or feel any responsibility for doing so.

The record in this case supports the finding of abandonment and the termination of appellant's parental rights.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.

---

1. The parental rights of the children's mother were terminated on the same grounds. Since she does not appeal, evidence relating to her conduct need not be considered except as it bears on the termination of appellant's parental rights.